UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------x

CARL WAYNE JAMES,

                Plaintiff,

- against -

ERIC SCHNEIDERMAN, et al.,

                Defendants.

-------------------------------------------x

12 Civ. 8512 (TPG)

**OPINION**

This is a civil rights case brought by *pro se* plaintiff Carl Wayne James. James alleges that a large group of defendants, including numerous officials of the State of New York, conspired to violate his rights under the Constitution and cause his unlawful confinement.

Defendants have moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). The motion is granted.

**Procedural History**

James filed his first complaint in this case on November 19, 2012. He then filed an Amended Complaint, adding certain new defendants, on September 9, 2013. On May 7, 2014, the court granted James permission to amend his complaint once again. Thereafter, in view of James's *pro se* status, the court granted James repeated extensions of

time to file the Second Amended Complaint.  The Second Amended Complaint was finally filed on October 20, 2014.  During the next several months, James served the complaint upon most, but not all of the named defendants.

On April 27, 2015, James requested leave to file a Third Amended Complaint, in which he proposed to name certain new defendants, also officials of the State of New York, as participants in the alleged conspiracy to violate his civil rights.  Observing that James had not articulated reasons why further amendment was necessary, the court denied the request to amend the complaint a third time.

On June 30, 2015, defendants moved to dismiss the Second Amended Complaint ("SAC").  James missed a deadline to submit opposition papers on July 14, 2015.  The court subsequently granted an extension until August 21, 2015.

To date, James has not submitted opposition papers.  Instead, he has written the court contending that he cannot submit an opposition, because some of his papers have been destroyed.  He requests an opportunity to present new evidence and introduce new claims.  This request is denied.  It is time for the court to decide the pending motion to dismiss.

## The Complaint

James' central allegation is that defendants unlawfully conspired to seek his confinement pursuant to Article 10 of the New York Mental

Hygiene Law ("Article 10") in order to cover up misconduct by New York State officials, and to retaliate against James for filing a complaint against his former parole officer. Article 10 creates, among other things, a regime of civil monitoring, treatment, and detention for sex offenders who pose a danger to society. See MHL §10.01.

James names twenty-one defendants in the case. Sixteen are officials of the State of New York, including numerous current parole officials, an officer of the New York Department of Mental Health, and several attorneys employed by the State of New York. The remaining defendants are two former parole officials, a woman who filed charges of sexual assault against James, a director of a private psychological services company that worked with James, and James' former attorney. The following facts come from the SAC, and are taken as true for the purposes of this motion to dismiss.

On March 23, 2011, James filed an administrative complaint against his parole officer, in which he stated that, among other things, the parole officer had endangered his life by making inflammatory false statements about him in the presence of another parolee. SAC ¶ 23. James' parole officer then, according to the SAC, conspired with a psychologist working for the State of New York to conduct a fraudulent psychological examination which concluded that James required strict supervision or confinement, pursuant to Article 10. Id. ¶¶ 53, 60, 118.

James further alleges in the SAC that numerous other defendants—also in retaliation for his March 23, 2011 complaint against his parole officer—conspired to cause the revocation of his parole, and ultimately, his Article 10 confinement.

The events that led to James' parole revocation occurred between April, 2011 and June, 2011.  First, James alleges that a different parole officer (to whom he was reassigned after making his March 23, 2011 complaint) induced him to violate the terms of his parole by encouraging him to travel without first issuing a travel pass.  Id. ¶¶ 24, 25.  Then, James alleges, the director of the sex offender program in which he was mandated to participate falsely reported that he had refused to participate in treatment sessions.  Id. ¶¶ 26, 27.  Per the SAC, this false report was made in order to retaliate against James for complaining of his parole officer's conduct on March 23, 2011.  Id.

Several days later, a private acquaintance of James—also named as a defendant—filed a report stating that James sexually assaulted her. She obtained an Order of Protection from Queens Family Court.  Id. ¶¶ 30–31, 34.

James' parole was revoked in December, 2011 after a hearing featuring the testimony of his parole officer at the time, as well as the acquaintance who accused James of sexual assault.  SAC ¶ 41.  James alleges that the accusation of sexual assault was orchestrated by parole officer defendants who "knowingly violated plaintiff['s] due process rights

by having their star witness falsely accus[e] plaintiff of sexually assaulting her to cover up serious official misconduct that was committed by [plaintiff's former parole officer]." Id. ¶ 34.

The complaint contains little information about the year following James' parole revocation. However, on April 16, 2013, a doctor working for the New York State Department of Mental Health evaluated James and concluded that he had an inability to control his disposition to offend, requiring civil management. Id. ¶¶ 52-53. The finding was based in part on the fact that James had been accused of sexual assault while on parole, even though criminal charges were never filed in connection with that incident. Id. The doctor, who is named as a defendant in this case, testified as to his findings at a June 20, 2013 hearing before the Westchester County Supreme Court. Id. ¶ 58. James alleges that the doctor was not knowledgeable about James' case when he offered that testimony. Id. Nonetheless, relying in part on the doctor's testimony, the Westchester County Supreme Court ordered an investigation into imposing Strict and Intensive Supervision and Treatment ("SIST") conditions upon James. On August 20, 2014, SIST conditions were imposed upon James pursuant to MHL §10.11. Id. ¶ 60.

On May 1, 2014, a new parole officer assigned to James informed him that, on orders from the New York State Attorney General's office, new supervision conditions were being imposed, in addition to his existing SIST conditions. Namely, James was prohibited from visiting the

Bronx, Brooklyn, or Jamaica, Queens, without his parole officer's approval.  Id. ¶ 72.  James alleges that the imposition of these new conditions with no hearing was a violation of MHL §10.11.

James also alleges that parole officers, in violation of his due process rights, removed or destroyed documents that would have helped James avoid his confinement.  SAC ¶¶ 83, 95.  First, they removed documents from James' parole case file that showed him in a favorable light and contradicted the notion that he was a dangerous sex offender.  Id.  Then, at a meeting with his parole officer on July 24, 2014, James was explicitly pressured to hand over certain case file documents that would "make parole look bad" by suggesting James was not, in fact, a dangerous sex offender.  James alleges that after he refused to hand over such documents, parole officers visited his house, searched his belongings and seized the documents without providing a receipt.  Id.

On August 18, 2014, James was taken into custody for violating his SIST conditions.  Id. ¶ 97.  James further alleges that his attorney failed, through myriad acts and omissions, to competently represent him in subsequent proceedings before the Westchester County Supreme Court during the summer and fall of 2014.  Id. ¶¶ 89-102.

James claims violations of his rights under the First, Fourth, Sixth, and Eighth Amendments, and seeks money damages under 42 U.S.C. §§ 1983 and 1985.

**Additional Background**

After the filing of the Second Amended Complaint, Justice Cacace of the Westchester County Supreme Court concluded in an order dated February 27, 2015 that James "violated his SIST conditions, that he is not an appropriate candidate for SIST and that he is a 'dangerous sex offender' requiring confinement pursuant to MHL §10.11(d)(4)." The finding rested, among other things, upon a new medical examination concluding that James was at high risk of re-offending, as well as the adverse testimony of numerous parole officials, many of whom are named defendants. James was committed to a secure facility for care and treatment until he no longer requires confinement.

**Discussion**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b), a complaint must plead sufficient facts to state a claim for relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To establish a facially plausible case, a plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. In deciding a motion to dismiss, the court accepts as true all well-pleaded allegations contained in the complaint and draws all reasonable inferences in favor of the plaintiff. See Twombly, 550 U.S. at 555–56. However, "[t]hreadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

Because James is proceeding *pro se*, this court is required to read his papers liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed." (internal citation omitted)). Accordingly, his submissions have been held to relaxed standards.

### I. The Complaint Should be Dismissed as to the Immune Defendants

James names as defendants three attorneys of the State of New York, alleging their complicity in a conspiracy to effect his confinement pursuant to Article 10 of the New York Mental Hygiene Law. Specifically, James contends that they imposed additional SIST conditions—to wit, prohibiting James from visiting certain parts of New York City—without obtaining required court approval, and otherwise turned a blind eye to the misconduct of parole officers.

Prosecutors enjoy immunity from § 1983 liability "broadly defined, covering virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." Giraldo v. Kessler, 694 F.3d 161, 165 (2d Cir. 2012) (internal quotation omitted). This immunity extends to the initiation of noncriminal proceedings including civil litigation and administrative proceedings. See Cornejo v. Bell, 592, F.3d 121, 127–28 (2d Cir. 2010). Both the Supreme Court and the Second Circuit have made plain that the doctrine of absolute immunity shields even

prosecutorial actions whose character is more "administrative" or "investigative" than paradigmatically prosecutorial, so long as the actions are done in furtherance of a prosecutor's function as an advocate of the state.  See Warney v. Monroe County, 587 F.3d 113, 124 (2d Cir. 2009) (Absolute immunity applied where "the prosecutors' actions . . . which could be seen as administrative or investigative, were . . . integral to the overarching advocacy function of dealing with post-trial initiatives challenging an underlying criminal conviction . . . ."); see also Van de Kamp v. Goldstein, 555 U.S. 335, 344 (2009) (Prosecutorial "activities . . . [that] necessarily require legal knowledge and the exercise of related discretion" are shielded by absolute immunity.)

Here, James contends that New York State attorneys improperly caused the imposition of SIST conditions, and ignored parole officials' misconduct, leading to his confinement under Article 10.  Such actions alleged are intimately connected to the attorneys' functions as advocates for the interests of the State of New York.  Accordingly, the doctrine of absolute immunity prevents these actions from serving as the basis for liability under § 1983.  The claims against defendants Yachsyn, Henderson, and Schneiderman are dismissed.

## II.     Dismissal Under Heck v. Humphrey

The Supreme Court announced in Heck v. Humphrey that a district court may not find in favor a plaintiff in a suit under § 1983 where "judgment in favor of the plaintiff would necessarily imply the

invalidity of his conviction or sentence," and the conviction or sentence has not already been invalidated.  512 U.S. 477, 487 (1994).

In this Circuit, it has not yet been decided whether Heck applies in cases where the plaintiff endures civil confinement, rather than a criminal conviction or sentence.  See Vallen v. Connelly, 36 Fed. App'x 29, 30 (2d Cir. 2002).  However, other Circuits have concluded clearly and persuasively that Heck does apply in the context of civil confinement.  See, e.g., Banda v. N.J. Special Treatment Unit, 164 Fed. App'x 286, 287 (3d Cir. 2006) (claims under § 1983 not cognizable where an outcome in plaintiff's favor would "necessarily imply the invalidity of his [civil] confinement"); Huftile v. Miccio-Fonseca, 410 F.3d 1136, 1140 (9th Cir. 2005) ("[T]he success of [plaintiff's] § 1983 claim would necessarily imply the invalidity of his civil commitment."); Savinski v. Thornton, 93 Fed. App'x 923, 924 (7th Cir. 2004) ("Although [plaintiff] contends that he does not want the court in this § 1983 action to order his release, the remedy he does seek is incompatible with the state's rationale for his continued [civil] confinement [pursuant to Wisconsin's sexual violence law].  That brings the § 1983 action within the scope of Heck . . . .").

Here, James alleges that defendants violated his constitutional rights through many distinct acts, including improperly imposing SIST conditions, orchestrating false testimony, denying him adequate representation, and destroying exculpatory documents.  But all of these

acts are directly connected to James' core allegation, namely that his confinement as a dangerous sex offender under Article 10 of the New York Mental Hygiene Law was obtained unlawfully. The court concludes that James' claims, if true, would undermine the legality of his civil confinement. Accordingly, they are barred by Heck.

Sections 1983 and 1985 simply do not provide a proper remedy at this time. Rather than seeking monetary compensation for a confinement that has not been found to be unlawful, James should directly challenge his confinement using a petition for writ of habeas corpus or other available mechanism.

## Conclusion

All claims against the immune defendants are dismissed with prejudice. All claims against other defendants are dismissed without prejudice to renewal if James' civil confinement is invalidated. This resolves all motions in this case.

Dated: New York, New York
       October 15, 2015

SO ORDERED

_____
Thomas P. Griesa
U.S.D.J.